No. 15-1110

IN THE

## United States Court of Appeals for the Seventh Circuit

---

THOMAS COSTELLO, MEGAN BAASE KEPHART, OSAMA DAOUD,
*et al.,* individually and on behalf of all others similarly situated,

*Plaintiffs-Appellees*, *Cross-Appellants*
v.

BEAVEX, INC.

*Defendant-Appellant, Cross-Appellee*.

---

On Petition for Interlocutory Appeal from an Order of the United States
District Court for the Northern District of Illinois

Case No. 12-cv-7843
The Honorable Judge Virginia M. Kendall
Magistrate Judge Mary M. Rowland

---

### DEFENDANT-APPELLANT, CROSS-APPELLEE
### BEAVEX'S RESPONSE AND REPLY BRIEF

---

MCGUIREWOODS, LLP

Kevin M. Duddlesten
2000 McKinney Ave., Suite 1400
Dallas, Texas 75201
Telephone: 214.932.6419

Brian E. Spang
77 W Wacker Drive, Suite 4100
Chicago, Illinois 60601-1818
Telephone:     312.849.8100

W. Joseph Miguez
816 Congress Ave., Suite 940
Austin, Texas 78701
Telephone: 512.617.4524

*Counsel for Defendant*

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW BY PLAINTIFFS'
    PRINCIPAL BRIEF...................................................................................2

STATEMENT OF THE CASE REGARDING PLAINTIFFS' APPEAL ...................3

I.    Nature Of Plaintiffs' Appeal .................................................................3

II.    Facts Relevant To Plaintiffs' Appeal ...................................................4

SUMMARY OF THE ARGUMENT ................................................................6

ARGUMENT REGARDING THE DENIAL OF CLASS CERTIFICATION............................11

I.    The Rule Against One-Way Intervention Prohibits Class Certification Because
    Plaintiffs Sought And Received Summary Judgment On Their IWPCA Claim. ..............11

    A.    Standard Of Review....................................................................11

    B.    The Rule Against One-Way Intervention. .............................................12

    C.    The Rule Against One-Way Intervention Bars Plaintiffs' Request For
        Class Certification...................................................................13

    D.    Plaintiffs' Litigation Strategy Triggered The Rule Against One-Way
        Intervention. .......................................................................16

    E.    Plaintiffs' Attempts To Side-Step The Rule Against One-Way Intervention
        Lack Merit...........................................................................18

        1.    "Efficiency" Considerations Do Not Trump The Rule Against
            One-Way Intervention. ...........................................................18

        2.    The Authority To Amend Class Certification Orders Before
            Judgment Does Not Trump Or Eviscerate The Rule Against One-
            Way Intervention. .................................................................18

        3.    BeavEx Did Not Waive Protection Of The Rule Against One-Way
            Intervention. ......................................................................19

        4.    The District Court Did Not Abuse Its Discretion By Deciding
            Plaintiffs' Motion For Class Certification Before Deciding
            Plaintiffs' Motion For Summary Judgment. ..................................21

## TABLE OF CONTENTS
(continued)

Page

II.   The District Court Did Not Abuse Its Discretion By Declining To Rule On The Merits Of Plaintiffs' IWPCA Claim When Deciding Class Certification. ........................23

    A.   Rule 23 Prohibits Analysis of the Merits or Predictions of the Probable Outcome of Plaintiffs' Claim................................................................................23

    B.   The District Court Properly Applied Rule 23. ......................................................25

        1.   The District Court Properly Determined That Prong Two Could Be Determined Through Common Evidence – But Properly Declined to Decide The Merits. ................................................................................ 26

        2.   The District Court Correctly Applied the Law to The First Prong of the IWPCA Independent Contractor Test. ................................................ 27

III.   Summary. ...................................................................................................................28

BEAVEX'S REPLY IN SUPPORT OF FAAAA PREEMPTION ...............................................28

I.   Plaintiffs' Arguments Regarding The Scope Of The IWPCA Are Contradicted By Their Own Pleadings And Prayer For Damages....................................................28

II.   Other States' Limitations On Independent Contractor Usage Have Been Unanimously Struck Down At The Circuit Court Level, And That Result Is Consistent With Congress's Intent In Passing The FAAAA. ...........................................31

    A.   Both Independent-Contractor Bans That Have Reached the Circuit Court Level Were Ruled to Fall Within FAAAA's Broad Preemption Provision..........31

    B.   The IWPCA is Easily Distinguishable From So-Called "Background" Employment and Labor Laws...............................................................................32

    C.   The FAAAA Was Specifically Intended To Preempt Laws Like the IWPCA.................................................................................................................36

III.   The IWPCA Is Not Comparable To State Unemployment Insurance Or Other Similar Laws For Purposes Of FAAAA Preemption.............................................37

IV.   The First And Third Prongs Of The IWPCA's "Employee" Definition Are Not Severable From The Preempted Second Prong ...................................................38

CONCLUSION...........................................................................................................................39

CERTIFICATE OF COMPLIANCE ..........................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Aronson Furniture Co.*,
    971 F. Supp. 1259 (N.D. Ill. 1997) ......................................................................20

*Am. Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974)........................................................................7, 12, 15, 16

*Amati v. City of Woodstock*,
    176 F.3d 952 (7th Cir. 1999) ...............................................................................13

*Am. Trucking Associations, Inc. v. City of Los Angeles*,
    660 F.3d 384 (9th Cir. 2011) ................................................................................31

*Amgen, Inc. v. Connecticut Ret. Plans and Trust Funds*
    133 S. Ct. 1184 (2013).........................................................7, 8, 23, 24, 25

*Anderson v. Homedeliveryamerica.com, Inc.*,
    2013 WL 680745 (D. Mass Dec. 30, 2013)..........................................................21

*Arreola v. Godinez*,
    546 F.3d 788 (7th Cir. 2008) ................................................................13, 15, 16

*Bertrand ex rel. Bertrand v. Maram*,
    495 F.3d 452 (7th Cir. 2007) ...............................................................................15

*Brandon v. 3PD, Inc.*,
    No. 13-cv-03745, DE 76, slip. op. (N.D. Ill. Aug. 6, 2014) ..............................26

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*,
    90 F.3d 1264 (7th Cir. 996) ................................................................................11

*Chavez v. Illinois State Police*,
    251 F.3d 612 (7th Cir. 2011) .......................................................19, 20, 21, 22

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2014)........................................................................................23

*Cowen v. Bank United of Texas, FSB*,
    70 F.3d 937 (7th Cir. 1995) ..........................................................................20, 21

*Dilts v. Penske Logistics, Inc.*,
    769 F.3d 637 (9th Cir. 2014) ...............................................................................32

*Hakim v. Accenture U.S. Pension Plan*,
  735 F. Supp. 2d 939 (N.D. Ill. 2010) ........................................................21

*Hudson v. Chicago Teachers Union, Local No. 1*,
  922 F.2d 1306 (7th Cir. 1991) ..........................................................7, 17

*In Re FedEx Ground Package System, Inc. Employment Practices Litigation*,
  273 F.R.D. 424 (N.D. Ind. 2010) ("*In Re FedEx I*") .............................9, 26, 27, 28

*In Re Nassau County Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006) ...............................................................18

*Isaacs v. Sprint Corp.*,
  261 F.3d 679 (7th Cir. 2001) ..............................................................13

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) ..............................................................11

*Lamb v. Graco Children's Products, Inc.*,
  291 F.R.D. 665 (N.D. Fla. 2013)...........................................................21

*Massachusetts Delivery Association v. Coakley*,
  769 F.3d 11 (1st Cir. 2014)................................................................31

*McCall v. Monroe Muffler Brakes, Inc.*,
  2013 WL 3418089 (E.D. Mo. July 8, 2013) .................................................21

*Messner v. Northshore Univ. Healthsystem*,
  669 F.3d 802 (7th Cir. 2012) ........................................................8, 24, 25

*Peritz v. Liberty Loan Corp.*,
  523 F.2d 349 (7th Cir. 1975) ..........................................................7, 17

*Pieloor v. Gate City Bank*,
  2012 WL 4894863 (D.N.D. Oct. 15, 2012)...................................................21

*Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*
  814 F.2d 358 (7th Cir. 1987) .................................................6, 12, 13, 14, 16, 19

*S.C. Johnson & Son, Inc. v. Transportation Corp. of America*,
  697 F.3d 544 (7th Cir. 2012) ..............................................................29

*Sanchez v. Lasership*,
  937 F. Supp. 2d 730 (E.D. Va. 2013) ......................................................31

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ........................................................13, 24, 25

*Szabo v. Bridgeport Machines, Inc.*,
  249 F.3d 672 (7th Cir. 2001) .................................................................23, 24, 25

*United States v. Torres-Chavez*,
  744 F.3d 988 (7th Cir. 2014) ..........................................................................11

*Waste Management Holdings, Inc. v. Mowbray*,
  208 F.3d 288 (1st Cir. 2000)......................................................................24, 25

*Weir v. Joly*,
  2011 WL 6043024 (D. Ore. Dec. 2, 2011).......................................................21

*Wharton v. Comcast Corp.*,
  912 F.Supp.2d 655 (N.D. Ill. 2012) ................................................................29

**State Cases**

*Ayala v. Antelope Valley Newspapers, Inc.*,
  327 P.3d 165 (Cal. 2014) .................................................................................28

*Best v. Taylor Machine Works*,
  689 N.E.2d 1057 (Ill. 1997) ......................................................................38, 39

*Cincinnati Ins. Co. v. Chapman*,
  691 N.E.2d 374 (Ill. 1998) ...............................................................................39

*Hargrove v. Sleepy's*,
  2015 WL 214382 (N.J. Jan. 14, 2015) .............................................................34

*Lewis v. L.B. Dynasty*,
  770 S.E.2d 393 (S.C. 2015)..............................................................................28

*Novakivac v. Samutian*,
  820 N.E.2d 967 (Ill. App. 2004) ......................................................................39

*People ex rel. Harris v. Pac Anchor Transportation, Inc.*,
  329 P.3d 154 (Cal. 2014), cert. denied 2015 WL 731869 (U.S. Feb. 23, 2015) ..............32, 33

**Federal: Statutes, Rules, Regulations, Constitutional Provisions**

28 U.S.C.
  § 1292(b) ..........................................................................................................31
  § 1331................................................................................................................1

29 U.S.C.
  § 216(b)..............................................................................................................1

49 U.S.C.
  § 14501 ............................................................................................................10

**State Statutes**

820 ILCS
    115/2(1)..............................................................................................................9, 27
    405/100 et seq. ............................................................................................38

Cal. Bus. & Prof. Code
    § 17200 ("UCL") ...................................................................................32, 33

N.Y. Lab. Code
    § 862-b(1)(b)..................................................................................................35

**Rules**

Fed. R. Civ. P.
    Rule 23 ....................................................................6, 7, 8, 17, 23
    Rule 23(b)(3).................................................................................7, 18, 24
    Rule 23(c)(1)..................................................................................................19
    Rule 23(c)(1)(C)....................................................................................7, 18, 19
    Rule 28(b) ...................................................................................................1, 5

**Regulations**

HR Conf. Rep. 103-677 ...........................................................................................36

**Other Authorities**

5 Moore's Federal Practice
    § 23.84[2] at 23-390.1...........................................................................24

## JURISDICTIONAL STATEMENT

Pursuant to Circuit Rule 28(b), BeavEx states that the jurisdictional statement contained in the Principal and Response Brief of Plaintiffs-Appellees, Cross-Appellants is complete and correct, with one exception. Plaintiffs' statement that the District Court "had jurisdiction of this action under the provisions of the FLSA pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331" is not correct. Plaintiffs' Brief at 1.[1] Neither the initial Complaint nor the operative Amended Complaint asserted a claim under the Fair Labor Standards Act.

---

[1]    Because this matter involves two consolidated appeals, No. 15-1109 and No. 15-1110, Plaintiffs' Principal and Response Brief of Plaintiffs-Appellees, Cross-Appellants has been filed in each appeal, No. 15-1109 Docket Entry ("DE") 33 and No. 15-1110 DE 32. For convenience, this brief will cite to Plaintiffs' Principal and Response Brief of Plaintiffs-Appellees, Cross-Appellants as "Plaintiffs' Brief."

### STATEMENT OF ISSUES PRESENTED FOR REVIEW
### BY PLAINTIFFS' PRINCIPAL BRIEF

Plaintiffs sought and obtained partial summary judgment on the merits, a ruling the District Court made only after first denying Plaintiffs' motion for class certification. The District Court sequenced its rulings this way to avoid violating the well-established rule against one-way intervention, which bars Plaintiffs from seeking class certification after they have obtained summary judgment on the merits of their claim. The District Court properly refused Plaintiffs' invitation to engage in a free-ranging merits inquiry in determining that Plaintiffs failed to meet the requirements of Federal Rule of Civil Procedure 23, and refused Plaintiffs' subsequent invitation to use their grant of summary judgment as a basis for certifying the class Plaintiffs sought. Additionally, Plaintiffs have largely conceded that individualized issues predominate on one of the required elements of the claim for which they seek class treatment.

Given those circumstances, did the District Court abuse its discretion in denying (1) Plaintiffs' motion for class certification and/or (2) Plaintiffs' motion for reconsideration of the District Court's order denying class certification?

**STATEMENT OF THE CASE REGARDING PLAINTIFFS' APPEAL**

**I.      Nature Of Plaintiffs' Appeal.**

Plaintiffs' appeal of the District Court's denial of their motion for class certification presents two main legal issues. The first issue is the scope of the rule against one-way intervention. Plaintiffs sought and obtained summary judgment on their individual claims under the Illinois Wage Payment and Collection Act ("IWPCA"). Plaintiffs now contend that their partial victory on the merits can and should serve as a basis for certifying a class. BeavEx contends that, having obtained a ruling on the merits of their claim, Plaintiffs are barred as a matter of law by the rule against one-way intervention from seeking class certification as to that claim.

The second issue is the degree to which Rule 23 permits the District Court to determine the merits of a claim in the context of making the class certification decision. Here, that issue focuses on the second prong of the IWPCA's independent contractor test. Plaintiffs contend that (a) they will win on the merits of the second prong, and (b) they will therefore win on their IWPCA claim, so therefore (c) the District Court should have certified a class because Plaintiffs will (they claim) ultimately prevail as to their IWPCA claim. BeavEx, on the other hand, contends that the District Court was prohibited by law from evaluating the merits of Plaintiffs' IWPCA claim in applying Rule 23 to decide class certification.

As demonstrated below, on both issues the law supports BeavEx's positions, and either contradicts or outright prohibits Plaintiffs' positions. And while Plaintiffs may believe a "better course of action" existed for the District Court to have taken on the class certification issue Plaintiffs' Brief at 48, n. 20, in no way do Plaintiffs surmount the high bar of showing that the District Court abused its considerable discretion and ruled in a manner that ignored or misinterpreted the law or the facts when it denied Plaintiffs' attempt to certify a class.

## II.     Facts Relevant To Plaintiffs' Appeal

The parties' principal appellate briefs present an extensive recitation of the relevant background facts. *See* BeavEx's Principal Brief, No. 15-1109 DE 9 at 4-8 and No. 15-1110 DE 9 at 4-8; Plaintiffs' Brief at 7-10. BeavEx will not repeat all of those facts here. Rather, BeavEx will focus on the record evidence demonstrating that the individual circumstances of the putative class members' relationships and experience with BeavEx differed and cannot be established by common proof.

For example, the three named Plaintiffs devoted all of their working time to driving for BeavEx. None of them drove for any other courier company, or engaged in any other type of work, during the periods they drove full-time for BeavEx. *See* Plaintiffs' Local Rule 56.1(a)(3) Statement of Material Facts as to Which There is Not a Genuine Dispute, DE 77-9 at 33:4-12; 77-10 at 16:6-23; 77-13 at 46:5-11[2]. But the experiences of other putative class members differed from Plaintiffs' experiences. For instance, one putative class member drove on a limited basis for BeavEx for a period of time, and during that period of time also drove for a different company. *See* Defendant's Opposition to Plaintiffs' Motion for Class Certification. DE 92-7 at 12-13, 15-21. Other putative class members drove less than full-time for BeavEx because they were concurrently managing and operating their own separate and independent courier businesses, 92-2, ¶3; 92-3, ¶ 4.

Similarly, Plaintiffs testified that BeavEx did not permit them to take breaks or run personal errands while they drove BeavEx routes. *See* Memorandum in Support of Plaintiffs' Motion for Class Certification. DE 80-11 at 195; 80-12 at 168-69; 80-16 at 157. But other putative class members testified to just the opposite. In those individuals' experiences, BeavEx

---

[2]     As in BeavEx's Opening Brief, BeavEx cites to the District Court record by Docket Entry ("DE").

did permit couriers to take breaks and run personal errands while driving BeavEx routes, 92-4, ¶4; 92-5, ¶ 8.

Plaintiffs' individual experiences also differed from other putative class members regarding whether drivers had the power to negotiate prices terms. Plaintiff Daoud testified that he could not negotiate price, 92-8 at 97-92. But other putative class members did successfully negotiate price terms with BeavEx, 92-2, ¶ 6; 92-3, ¶ 8; 92-5, ¶ 10.

Additionally, the nature and type of Plaintiffs' engagements with BeavEx differed substantially from that of other putative class members. As stated above, Plaintiffs drove for BeavEx full-time, and treated their driving for BeavEx as if it were a full-time job. But other putative class members contracted with BeavEx through separate corporate entities, and treated their relationship with BeavEx as that of an independent business, which gains the profits and bears the losses of the enterprise, 92-2, ¶¶ 3-4; 92-3, ¶ 4, 9; *see also* 92-1, ¶ 6.[3]

---

[3]     Pursuant to Circuit Rule 28(b), BeavEx notes that it does not dispute Plaintiffs' Statement of the Case with regard to the relevant procedural history and the rulings presented for review relating to the District Court's order denying class certification and order denying reconsideration of that order.

## SUMMARY OF THE ARGUMENT

The District Court's order denying Plaintiffs' motion for class certification, and order denying reconsideration of that order, should be affirmed for several separate and independent reasons. Those reasons, as demonstrated below, are supported by the well-settled law of this Circuit, and by the procedural history and undisputed facts of this case.

First, Rule 23's prohibition against one-way intervention bars the relief Plaintiffs seek in this appeal. That rule requires a decision on class certification before a decision on the merits of the claim, to protect defendants from the unfairness that would result if the putative class members knew the outcome of the case before they were notified of the opportunity to join the case. Otherwise:

> "A victory by the plaintiff would be followed by an opportunity for other members of the class to intervene and claim the spoils; a loss by the plaintiff would not bind the other members of the class. . . . So the defendant could win only against the named plaintiff and might face additional suits by other members of the class, but it could lose against all members of the class."

*Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 362 (7th Cir. 1987). In other words, once plaintiffs seek and obtain a ruling on the merits of the underlying claim, the rule against one-way intervention forbids them from seeking class certification as to that claim.

Here, Plaintiffs made the strategic litigation choice to move for partial summary judgment on their IWPCA claim at the same time they moved for class certification. In response to Plaintiffs' strategic choice, BeavEx opposed Plaintiffs' motion for class certification by explaining and showing that the rule against one-way intervention prohibited the District Court from ruling on the merits of Plaintiffs' claim before ruling on class certification. The District Court acknowledged the prohibitive effect of the rule against one-way intervention, and specifically ruled on class certification before deciding Plaintiffs' motion for summary judgment.

6

The rule against one-way intervention prohibits plaintiffs who prevail on the merits of their claims from then seeking class certification. *Hudson v. Chicago Teachers Union, Local No. 1*, 922 F.2d 1306, 1317 (7th Cir. 1991) (affirming denial of certification of Rule 23(b)(3) damages class after a decision on the merits of the claim; "the district court correctly articulated the Supreme Court's and this circuit's rationale for denying certification on the 'one-way intervention rationale") (citing, *inter alia*, *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974); and *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 353-54 (7th Cir. 1975)). Consequently, Plaintiffs' strategic decision to seek and obtain summary judgment on their IWPCA claim prohibits them from obtaining class certification in this case. *Hudson*, 922 F.2d at 1317; *Peritz*, 523 F.2d at 354 (Plaintiffs "have themselves effectively precluded any class certification in this case").[4]

Second, in their motion for class certification Plaintiffs impermissibly requested that the District Court rule on the merits of their IWPCA claim. Indeed, Plaintiffs have gone so far as to argue "that courts may and must look at the merits when reviewing class certification." *See* Plaintiffs' Motion for Reconsideration of Denial of Class Certification or, in the Alternative, Renewed Motion for Class Certification Under Rule 23(c)(1)(C), DE No. 98 at 2. But that is not what the law says. To the contrary, the Supreme Court and this Court have explained that merits questions may only be decided to the limited extent necessary to determine whether Rule 23's requirements have been met. *Amgen, Inc. v. Connecticut Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1195 (2013) ("[m]erits questions *may* be considered to the extent – *but only to the extent* –

---

[4]    As Plaintiffs concede, their IWPCA claim is the sole basis upon which they seek class certification in this matter. Plaintiffs have also raised a statutory claim under the Illinois Minimum Wage Law, and a common-law claim for unjust enrichment, but made the strategic decision to forego class certification on those claims, and to put all their class eggs in the IWPCA basket. *See* Plaintiffs' Brief at 3, n. 1.

that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied") (emphasis added); *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 823-24 (7th Cir. 2012) ("'a court may take a peek at the merits before certifying a class,' but the peek must be 'limited to those aspects of the merits that affect the decisions essential under Rule 23'") (citation omitted). In other words, "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811 (citations omitted). Put another way, although the law merely permits the court to take a very limited "peek" at the merits, Plaintiffs (by moving for summary judgment) invited the Court to steadily and intently *stare* at the merits, and the Court accepted that invitation. Now, having obtained a favorable merits ruling, Plaintiffs disingenuously ask this Court to do the impossible and "unsee" the very merits-based points that formed the basis of its summary judgment ruling. As the saying goes, Plaintiffs are trying to butter both sides of their bread.

The District Court properly applied these controlling precedents in refusing Plaintiffs' invitation to commit error and decide the merits as to the second prong of the independent contractor test. The District Court determined that the second prong could be litigated through common proof, which is extent of the permissible Rule 23 inquiry. *Amgen*, 133 S. Ct. at 1194 ("a district court has no "'authority to conduct a preliminary inquiry into the merits of a suit at class certification unless it is necessary 'to determine the propriety of certification'") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 n.6) (2011)(internal citation omitted)); *Amgen*, 133 S. Ct. at 1195 ("An evaluation of the probable outcome on the merits is not properly part of the certification decision") (quoting Advisory Committee's 2003 Note on subd. (c)(1) of the FED. R. CIV. P. 23) (internal marks omitted). Consequently, the District Court properly refused to decide the merits of the second prong of the IWPCA independent contractor test, or any other

8

prong of the test, and correctly continued on to analyze whether the first and third prongs are triable through common proof.

Finally, the District Court properly determined that proving the first prong of the IWPCA's independent contractor test requires individualized inquiries which predominate over common issues. The first prong has two separate and independent parts, which are stated in the conjunctive: an independent contractor is someone "who has been and will continue to be free from control and direction over the performance of his work, *both* under his contract of service with his employer *and in fact* ..." 820 ILCS 115/2(1) (emphasis added). Plaintiffs contend that the "contract of service" part of this prong can be evaluated through common evidence, but "*concede* that control 'in fact' may require individualized assessments, and therefore *waive* any argument for class certification as to BeavEx's control 'in fact' ..." Plaintiffs' Brief at 52 (emphasis added). Plaintiffs' concession is consistent with case law on point. *In Re FedEx Ground Package System, Inc. Employment Practices Litigation*, 273 F.R.D. 424, 489 (N.D. Ind. 2010) ("*In Re FedEx I*") ("the structure of the Illinois Wage Act virtually requires a court to go beyond the terms of an agreement claimed to create an employment relationship ... [and therefore] Illinois law poses questions upon which [defendants] must be allowed to present drive-by-driver evidence") (denying class certification under Illinois law). Plaintiffs' concession is also consistent with the "disparity found" by the District Court "in the parties' respective declarations of numerous past and present drivers" regarding control "in fact," *See* Memorandum Opinion and Order, DE 95 at 23. Accordingly, the District Court did not abuse its discretion in denying class certification because individualized issues predominate

For all these reasons, the District Court did not abuse its discretion in denying Plaintiffs' motion for class certification. The District Court's order denying class certification, and its order denying reconsideration of that decision, should be affirmed.

At the same time, BeavEx has shown that the District Court erred when it failed to rule that Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 14501 ("FAAAA") preempts Plaintiffs' claims under the IWPCA, and specifically preempts the bar on the use of independent-contractor-based owner-operator business models found in the second prong of the IWPCA. Plaintiffs' arguments to the contrary in their Response Brief are contradicted by their own pleadings and prayer for damages, and by the operative case law, and the briefs submitted by *amici* in support of Plaintiffs' and in opposition to a finding of preemption add nothing compelling to the conversation. Neither Plaintiffs' Response Brief nor the three *amicus* briefs submitted on the point seriously or credibly refute the fact that, to date, two pieces of state-level legislation that barred motor carriers from using independent-contractor-based business models have been reviewed by federal Circuit Courts, and both have been held to be preempted by the FAAAA. That is so because those laws mandate the use by motor carriers of an employee-based business model and prohibit them from using an owner-operator-based business model. Those laws are therefore are not mere "background laws" that regulate an existing employer-employee relationship, but rather are state-level regulation of the business model by which a motor carrier may provide services to its customers in the market. For those reasons, and as set forth fully in BeavEx's *Brief and Required Short Appendix of Defendant-Appellant*, the District Court's order denying BeavEx's motion for summary judgment on the question of FAAAA preemption should be reversed.

## ARGUMENT REGARDING THE DENIAL OF CLASS CERTIFICATION

I.   **The Rule Against One-Way Intervention Prohibits Class Certification Because Plaintiffs Sought And Received Summary Judgment On Their IWPCA Claim.**

A.   **Standard Of Review.**

A District Court's order denying a motion for class certification, or a motion for reconsideration of such denial, are reviewed for abuse of discretion. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998) (class certification orders); *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 996) (motion for reconsideration). "That is a difficult standard" for an appellant "to meet." *United States v. Torres-Chavez*, 744 F.3d 988, 992 (7th Cir. 2014). In the class certification context, this Court has "likened appellants attempting to hurdle this high standard of review to 'rich men who wish to enter the Kingdom; their prospects compare with those of camels who wish to pass through the eye of a needle.'" *Keele*, 149 F.3d at 592 (citations omitted). That is because a District Court only abuses its discretion when it "resolves a matter in a way that no reasonable jurist would, or when its decision strikes us as fundamentally wrong, arbitrary or fanciful." *Torres-Chavez*, 744 F.3d at 922 (citation omitted).

As explained below, the District Court sequenced its rulings on Plaintiffs' motions seeking class certification and summary judgment to avoid ruling on the merits of Plaintiffs' IWPCA claim and, thus, violating the rule against on-way intervention. Plaintiffs' arguments largely boil down to criticism of that sequencing. The District Court acknowledged and followed ample Supreme Court and Seventh Circuit precedent governing these issues. *A fortiori*, the District Court did not resolve these issues in a way no reasonable jurist would.

Stated differently, Plaintiffs' Brief suggests that the District Court could have handled these matters differently. But whether the District Court could have handled matters differently is

not the question on appeal. The question is whether the District Court abused its discretion. For all the reasons explained in this section, no abuse of discretion occurred here.

**B.     The Rule Against One-Way Intervention.**

The so-called rule against "one-way intervention" is grounded in due process concerns, and arose out of what were referred to as "spurious" class actions. FED. R. CIV. P. 23, Adv. Comm. Notes to 1966 Amendments. A "spurious" class action is one "for damages in which a decision for or against one member of the class did not inevitably entail the same result for all" – *Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 362 (7th Cir. 1987) – *i.e.*, a class action in which the named plaintiff obtains judgment on the merits via summary judgment before a class is certified. In that situation, "members of the claimed class" would have been permitted "to await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974). That is unfair to class action defendants because a "victory by the plaintiff would be followed by an opportunity for other members of the class to intervene and claim the spoils; a loss by the plaintiff would not bind the other members of the class." *Premier Elec.*, 814 F.2d at 362 ("absent class members" should be prohibited from "waiting to see how things turned out before deciding what to do"). *See also* FED. R. CIV. P. 23, Adv. Comm. Notes to 1966 Amendments (discussing the "so-called 'one-way' intervention in 'spurious' actions"). Or, as this Court vividly and memorably described it in *Premier Elec.*, such a strategy by class action plaintiffs allowed defendants to be "pecked to death by ducks. One plaintiff could sue and lose; another could sue and lose; and another and another until one finally prevailed; then everyone else would ride on that single success." 814 F.2d at 362.

The 1966 amendments to Rule 23 "were designed, in part, specifically to mend this perceived defect in the former Rule." *Am. Pipe*, 414 U.S. at 547. Specifically, "one-way

intervention is excluded" under the then-newly added FED. R. CIV. P. 23(c)(3). FED. R. CIV. P. 23, Adv. Comm. Notes to 1966 Amendments. This Court's decisions leave no room to debate this point, and make clear that the days of a flock of would-be class representatives pecking defendants to death are over. *E.g.*, *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("the one-way-intervention model … was ditched by the 1966 amendments to Rule 23").[5] The rule against one-way intervention requires the trial court to resolve class action issues, including the decision whether to certify a class, before addressing the substantive merits of the case. In this way the rule against one-way intervention "bars potential class members from waiting on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervening to take advantage of the judgment." *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir. 1999).

### C.    The Rule Against One-Way Intervention Bars Plaintiffs' Request For Class Certification.

In this case, Plaintiffs chose to seek a dispositive ruling on the merits of the second prong of the IWPCA's independent contractor test before the District Court had ruled on their motion for class certification. The District Court properly concluded that it could not rule on the merits at Plaintiffs' request before it had resolved the issue of class certification. DE 95 at 25-26. Accordingly, the District Court *first* denied class certification, so as to avoid conflicts with the rule against one-way intervention. Then, having resolved the necessary class-related issues, the District Court considered and granted Plaintiffs' motion for partial summary judgment on the

---

[5]    *See also*, *e.g.*, *Arreola v. Godinez*, 546 F.3d 788, 800 (7th Cir. 2008) ("… Rule 23 does not create a form of one-way intervention under which class issues need not be reached unless or until the plaintiff has won or almost won"); *Isaacs v. Sprint Corp.*, 261 F.3d 679, 681-82 (7th Cir. 2001) ("one-way intervention is forbidden") (citations omitted); *Premier Elec.*, 814 F.2d at 362 ("A principal purpose of the 1966 revision of Rule 23 was to end 'one-way intervention'").

merits of their IWPCA claim.[6] Unhappy with the result of their strategic choice, Plaintiffs moved the Court to reconsider its denial of class certification, and to thereby commit error by certifying the proposed class *after* the Court had already made a fact-based merits ruling at Plaintiffs' request. Put another way, the three named Plaintiffs attempted to use their limited partial summary judgment victory as the glue to hold together a class. Having already addressed the merits of Plaintiffs' underlying IWPCA claim, the District Court correctly refused to reconsider its decision that Plaintiffs had failed to meet their burden under Rule 23.

This case is a textbook example of exactly what the rule against one-way intervention was intended to prevent. The District Court's entry of partial summary judgment is precisely the sort of significant merits determination that would impermissibly permit absent class members to "wait[] to see how things turned out before deciding" whether to remain in any class that might later be certified. *Premier Elec.*, 814 F.2d at 362. The Court's ruling on Plaintiffs' summary judgment motion would inform and influence absent class members' decisions on whether to opt out of the case. A ruling that class certification may be based upon a partial summary judgment in favor of Plaintiffs would contradict well-established Circuit precedent.

The gross injustice of such a result, and the need to ensure strict compliance with the one-way intervention rule, has been thoughtfully articulated by this Court:

> "A victory by the plaintiff would be followed by an opportunity for other members of the class to intervene and claim the spoils; a loss by the plaintiff would not bind the other members of the class. . . . So the defendant could win only against the named plaintiff and might face additional suits by other members of the class, but it could lose against all members of the class."

*Premier Elec.*, 814 F.2d at 362.

---

[6]     *See* DE 95 at 15-23 (denying class certification); *id.* at 24 ("Although the motion for class certification is denied, the [plaintiffs'] summary judgment motion as to the named plaintiffs is ripe[.]")

The Supreme Court has also definitively weighed in against one-way intervention, explaining that:

> "A recurrent source of abuse under the former Rule lay in the potential that members of the claimed class could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests. If the evidence at the trial made their prospective position as actual class members appear weak, or if a judgment precluded the possibility of a favorable determination, such putative members of the class who chose not to intervene or join as parties would not be bound by the judgment. . . . *The 1966 amendments were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments.*"

*Am. Pipe* (emphasis added).

Subsequent decisions by this Court have made clear that the relief requested by Plaintiffs here is flatly prohibited. Treatment of plaintiffs and defendants "is supposed to be symmetric, which is possible only if a class is certified (or not) **before** decision on the merits." *Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 455 (7th Cir. 2007) (emphasis added). As a result, this Court has expressly admonished district judges to deny the relief Plaintiffs seek here:

> "We do not even know whether the district court was thinking of trying [plaintiff's] individual claim for damages first, and then seeing whether class certification was proper, although we doubt that this was the court's plan, given the command in Rule 23(c)(1)(A) that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." (In any event, **it should not have been the plan: Rule 23 does not create a form of one-way intervention under which class issues need not be reached unless or until the plaintiff has won or almost won.**)"

*Arreola v. Godinez*, 546 F.3d 788, 800 (7th Cir. 2008) (emphasis added). And as the Supreme Court stated in *Am. Pipe*, there need not be a final judgment in place before class certification becomes a one-way street. Rather, this safeguard kicks in whenever absent class members have enough of an advance look at the merits to understand that their "prospective position as actual

15

class members" is either especially weak or especially strong. *Am. Pipe*, 414 U.S. at 547; *see also Arreola*, 546 F.3d at 800 (one-way intervention exists if the class has already "won or almost won").

Thus, the relief Plaintiffs seek here flies in the face of Supreme Court and Seventh Circuit precedent, and contravenes the very purpose of the rule against one-way intervention: that is, protecting defendants in would-be class litigation against suffering death by a thousand cuts, and preventing the decisions of putative class members from being influenced in any way by a ruling on the merits of the individual Plaintiffs' claims. The alternative—what Plaintiffs seek here—is to allow a partial merits victory for three Plaintiffs to be used as the glue to bind together an exponentially larger class of plaintiffs, when a defeat on the merits would *not* have bound that larger group, and where a necessary precondition of Plaintiffs' merits victory was a denial of the very relief they seek from this Court. Denial of class certification was the price Plaintiffs had to pay as a precondition of their summary judgment win. Now, having obtained that win, Plaintiffs seek a refund of the price. As the Supreme Court and this Court have repeatedly explained, that would be an unfair result, and the Federal Rules expressly prohibit it. *Am. Pipe*, 414 U.S. at 547; *Premier Elec.*, 814 F.2d at 362.

### D.      Plaintiffs' Litigation Strategy Triggered The Rule Against One-Way Intervention.

Plaintiffs should not be heard to complain about the effects of the rule against one-way intervention, because Plaintiffs knowingly and willingly placed themselves in their current position by choosing to pursue—and obtaining—judgment on the merits of their claims before class certification was decided. Circuit precedent and basic fairness bind Plaintiffs to the legal consequences of their choice.

16

*Hudson v. Chicago Teachers Union, Local No. 1*, 922 F.2d 1306 (7th Cir. 1991), is instructive. During that protracted litigation, both this Court and the Supreme Court "adjudicated the merits of the plaintiffs' claims." *Hudson*, 922 F.2d at 1308. Following remand to the District Court, the plaintiffs renewed a prior motion for class certification. The District Court denied plaintiffs' renewed motion for class certification explaining "that Rule 23 requires certification of a (b)(3) class *prior* to a determination on the merits in order to prevent the inequitable practice of 'one-way intervention' ... Thus, the [trial] court believed it had no choice but to deny the plaintiffs' motion for certification." *Hudson*, 922 F.2d at 1308-09 (italics in original, citing *Hudson v. Chicago Teachers Union, Local No. 1*, 117 F.R.D. 413, 415 (N.D. Ill. 1987)). This Court affirmed, concluding that "the district court correctly articulated the Supreme Court's and this circuit's rationale for denying certification on the 'one-way intervention' rationale." *Hudson*, 922 F.2d at 1317 (citations omitted). The fact that the merits had been determined automatically triggered the rule against one-way intervention, and prohibited certification of a class. *See also Peritz*, 523 F.3d at 354 (because plaintiffs "affirmatively sought resolution on the merits prior to certification in the face of objections by the defendants, they have themselves effectively precluded any class certification in this case.")

Plaintiffs cannot un-ring their summary judgment bell. Rule 23's incorporation of the rule against one-way intervention, as explained and applied by *Am. Pipe*, *Peritz*, *Hudson*, and the other authorities cited in this section, prohibits Plaintiffs from obtaining class certification after obtaining a decision on the merits of their IWPCA claim.

### E.    Plaintiffs' Attempts To Side-Step The Rule Against One-Way Intervention Lack Merit.

Given the clear mandate against one-way intervention, it is no surprise that Plaintiffs' Brief does not address that issue head on, but instead includes several arguments which attempt to side-step the rule. All of those arguments lack merit.

#### 1.    "Efficiency" Considerations Do Not Trump The Rule Against One-Way Intervention.

Plaintiffs argue that the denial of class certification conflicts with the purpose of Rule 23(b)(3). Plaintiffs contend that the purpose of Rule 23(b)(3) is "efficiency," and that affirming the District Court would be inefficient. Plaintiffs' Brief at 57-58. Plaintiffs do not cite any cases permitting class certification in violation of the rule against one-way intervention for reasons of efficiency. That is because no such cases exist.[7] The rule against one-way intervention would be eviscerated if abstract considerations of "efficiency" authorized class certification after the merits of a claim had been decided.

#### 2.    The Authority To Amend Class Certification Orders Before Judgment Does Not Trump Or Eviscerate The Rule Against One-Way Intervention.

Plaintiffs contend that the District Court abused its discretion by refusing to "alter or amend" its denial of class certification – *i.e.*, by refusing to reverse itself – based on the granting of summary judgment to Plaintiffs on their IWPCA claim. Plaintiffs' Brief at 55. ("Because the [District] Court ruled that Plaintiffs are employed by BeavEx under the IWPCA, it could have revisited its decision on class certification"). Plaintiffs cite Rule 23(c)(1)(C) to support this

---

[7]    In *In Re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006), the defendants conceded an issue and argued that the conceded issue should not be part of the Rule 23 analysis. The Second Circuit rejected that argument. That decision is inapposite because it does not address the one-way intervention issues present here.

argument, which provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Plaintiffs are wrong.

The provision permitting the altering or amending of a class certification order was added to Rule 23 as part of the 1966 amendments. Rule 23(c)(1) (1966) ("An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits"). As explained above, "[a] principal purpose of the 1966 revisions of Rule 23 was to end 'one-way intervention.'" *Premier Elec.*, 814 F.2d at 362. It is therefore absurd to suggest that the authority to alter or amend a class certification order authorizes an order which would violate the rule against one-way intervention.

The Advisory Committee Notes to the 2003 amendments to Rule 23 confirm this point. The notes discuss a linguistic change to the provision permitting amendment of a class certification order, but very clearly and very specifically explain that "[t]he authority to amend an order under Rule 23(c)(1) before final judgment does not restore the practice of 'one-way intervention' that was rejected by the 1966 revision of Rule 23." FED. R. CIV. P. 23, Adv. Comm. Notes to 2003 Amendments. Plaintiffs' argument that Rule 23(c)(1)(C) authorized the District Court to "amend" its denial of class certification based on the summary judgment in Plaintiffs' favor is therefore meritless.

### 3.    BeavEx Did Not Waive Protection Of The Rule Against One-Way Intervention.

Plaintiffs note that the general rule that class certification issues be decided before the merits is not absolute, citing to *Chavez v. Illinois State Police*, 251 F.3d 612, 629 (7th Cir. 2011) and several district court decisions as examples of cases in which dispositive motions were considered before class certification. However, as *Chavez* explains, such cases involve the

*defendant* moving for summary judgment, or at least not objecting to the plaintiff moving for summary judgment (*i.e.*, agreeing to the filing of cross-motions for summary judgment).

In *Chavez*, for example, the defendant moved for summary judgment, and the district court resolved that motion before the plaintiff's class certification because the plaintiff's claims clearly lacked merit. 251 F.3d at 629-30. *Chavez* also cites *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995), as an example of another situation in which it was appropriate to decide a summary judgment motion before class certification. The district court in *Cowen* likewise appropriately decided the *defendant's* summary judgment motion before class certification, again because the plaintiff's claims lacked merit. *Chavez*, 251 F.3d at 630 ("if the court determines that the plaintiffs' claims lack merit, such a decision 'ordinarily, though not invariably … disqualifies the named plaintiffs as proper class representatives,' thus resolving the issue of class certification") (quoting *Cowen*, 70 F.3d at 941). Another case cited by Plaintiffs thoroughly explains the point:

> "Ordinarily, the Federal Rules require courts to rule on class motions … before deciding any of the merits questions. But the Seventh Circuit, among others, has held that despite this directive, in certain cases it might be appropriate to rule on a summary judgment motion prior to ruling on the class motion. [citing, *inter alia*, *Cowen v. Bank United*, 70 F.3d 937, 941 (7th Cir. 1995)]. The only guidance these sources provide regarding when this approach might be appropriate is that if the plaintiffs' claims are without merit, summary judgment may properly precede a ruling on the motion for class certification … we believe the plaintiffs' claims are without merit, and we therefore choose to issue a ruling on the merits before considering the motion for class certification."

*Allen v. Aronson Furniture Co.*, 971 F. Supp. 1259, 1261 (N.D. Ill. 1997). *See also* Fed. R. Civ. P. 23, Adv. Comm. Notes to 2003 Amendments ("The party *opposing* the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified") (emphasis added).

The district court decisions string-cited by plaintiffs are consistent with these authorities. All involved either the defendant moving for summary judgment, or the defendant waiving the protections of the rule against one-way intervention by failing to object to a plaintiff's cross-motion. None involved a plaintiff seeking summary judgment over the defendant's objection. Plaintiffs cite no such cases from within this Circuit, because no such cases exist. Accordingly, no support exists for Plaintiffs' argument that they – as plaintiffs – may move for summary judgment first and subsequently, over the defendant's objection, move for class certification based on a favorable ruling on that motion.[8]

### 4.     The District Court Did Not Abuse Its Discretion By Deciding Plaintiffs' Motion For Class Certification Before Deciding Plaintiffs' Motion For Summary Judgment.

*Chavez* and the other cases Plaintiffs string-cite do not create a categorical rule requiring a District Court to decide a dispositive motion before ruling on class certification. Indeed, Plaintiffs acknowledge that, at most, a district court "*may* ... reach summary judgment before class certification ..." (Plaintiffs' Brief at 55) (emphasis added). This Court has repeatedly

---

[8]     *See Hakim v. Accenture U.S. Pension Plan*, 735 F. Supp. 2d 939, 956-57 (N.D. Ill. 2010) ("Here, in light of Defendants' arguments casting doubt on the merits of the named plaintiff's claims, the Court determined that it was in the interest of judicial economy to decide Defendants' motion for summary judgment before addressing the question of class certification") (discussing, *inter alia*, *Cowen*, 70 F.3d at 941); *Pieloor v. Gate City Bank*, 2012 WL 4894863, at *8 (D.N.D. Oct. 15, 2012) ("courts in appropriate cases have dismissed a proponent's claim on the merits when a defendant has sought that relief, rather than deferring defendant's dispositive motion …"); *Weir v. Joly*, 2011 WL 6043024, at *1 (D. Ore. Dec. 2, 2011) ("a defendant may request a ruling on its summary judgment prior to class certification"; declining to rule on plaintiff's summary judgment motion until after class certification); *Lamb v. Graco Children's Products, Inc.*, 291 F.R.D. 665, 666 (N.D. Fla. 2013) ("good case management sometimes calls for addressing the merits of a named plaintiff's claims before class certification" because "a defect in a claim that is unique to a named plaintiff sometimes renders the claim atypical and renders the named plaintiff an inadequate class representative"); *McCall v. Monroe Muffler Brakes, Inc.*, 2013 WL 3418089 (E.D. Mo. July 8, 2013) (granting defendant's motion for summary judgment). *Anderson v. Homedeliveryamerica.com, Inc.*, 2013 WL 680745 (D. Mass Dec. 30, 2013), does consider plaintiff's motion for summary judgment, but does not indicate that the defendant objected or consider the rule against one-way intervention. That this court and others within the District of Massachusetts seem to apply a different standard than this Circuit requires does not aid Plaintiffs here.

emphasized that the discretion to address summary judgment before class certification is limited and only appropriate in unique circumstances:

> "In most circumstances, a judge should determine whether to grant or deny certification prior to ruling on the merits, as indicated by the text of Rule 23 ... This is the preferred policy as 'the propriety of class certification does not depend on the outcome of the suit. . . . It is therefore difficult to imagine cases in which it is appropriate to defer class certification until after decision on the merits.'"

*Chavez*, 251 F.3d at 629-30 (quoting *Bieneman v. City of Chi.*, 838 F.2d 962, 964 (7th Cir. 1988)).

Plaintiffs do not explain how or why this case falls within the narrow category of unique cases in which deciding summary judgment before class certification might be permissible. The District Court specifically considered and addressed this point in its order, explaining that it decided class certification before Plaintiffs' motion for summary judgment so as not to run afoul of the rule against one-way intervention. DE 95 at 25-26. ("Clearly, BeavEx's concerns [about the rule against one-way intervention] are assuaged here as the Court has denied the Plaintiffs' motion for class certification ...."). The District Court therefore did not abuse its considerable discretion in deciding class certification and summary judgment in the order strongly recommended, if not mandated, by Rule 23 and this Court's precedents.[9]

In sum, Plaintiffs have prevailed on the merits of their individual IWPCA claims. The rule against one-way intervention now bars Plaintiffs from obtaining class certification. The

---

[9]     *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000), relied upon by Plaintiffs, supports this conclusion. The District Court there invited plaintiff to file a motion for summary judgment before class certification, granted the motion, and then ruled on class certification. The defendant did not object to this sequencing. The First Circuit nevertheless noted that "this sequencing raises serious questions," and urged "district courts to exercise caution before deciding to embrace it." 208 F.3d at 299 n.7. The District Court here specifically exercised caution by deciding **not** to embrace the disfavored summary judgment first, class certification later sequencing Plaintiffs requested, and by instead adhering to the well-established rule that class certification should be decided before ruling on the merits. The District Court therefore cannot be said to have abused its broad discretion.

District Court's order denying class certification, and its order declining to reconsider that decision, should therefore be affirmed.

## II.    The District Court Did Not Abuse Its Discretion By Declining To Rule On The Merits Of Plaintiffs' IWPCA Claim When Deciding Class Certification.

In Plaintiffs' Brief, Plaintiffs argue that "according to the Seventh Circuit, a court *must* make whatever factual and legal inquiries are *relevant* in order to assure that the requirements for class certification are met, even if these considerations overlap with the merits of the case." Plaintiffs' Brief at 45, (emphasis added, citing *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001)). Plaintiffs have similarly argued that "Courts are now commanded to consider the merits when determining the suitability of class certification." *See* Plaintiffs' Reply Brief in Support of Their Motion for Class Certification, DE 93 at 3. Plaintiffs frankly misstate the law. "[A]n evaluation of the probable outcome of on the merits is not properly part of the certification decision." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) (citing FED. R. CIV. P. 23, Adv. Comm. Notes to 2003 Amendments). *Szabo*, cited by Plaintiffs on this point, states only that a judge "*should*" make whatever factual and legal determinations [that] are *necessary*" to determine whether Rule 23's requirements have been met – not that courts must rule on any matters relevant to class certification. 249 F.3d at 676 (emphasis added). The District Court did not abuse its discretion by following this Supreme Court and Seventh Circuit precedent.

### A.    Rule 23 Prohibits Analysis of the Merits or Predictions of the Probable Outcome of Plaintiffs' Claim.

The Supreme Court and the Seventh Circuit have recognized that the "rigorous analysis" mandated by Rule 23 may sometimes require the court to "probe behind the pleadings," and that "the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Comcast Corp. v. Behrend*, 133 S. Ct.

1426, 1432 (2014) (citations omitted); *Szabo*, 249 F.3d at 676-77. However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194-95. Accordingly, any consideration of merits issues must be limited to those issues *necessary to deciding class certification*. *Amgen*, 113 S. Ct. at 1195 ("Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied"); *id* ("a district court has no 'authority to conduct a preliminary inquiry into the merits of a suit' at class certification unless it is necessary 'to determine the propriety of certification'") (quoting *Wal-Mart*, 131 S. Ct. at 2552 n.6) (internal citation omitted); *Schleicher v. Wendt*, 618 F.3d 679, 687 (7th Cir. 2010) ("Although we concluded in *Szabo*[] that a court may take a peek at the merits before certifying a class, *Szabo* insisted that this peek be limited to those aspects of the merits that affect the decisions essential under Rule 23"). In other words, "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811; *see also Amgen* 133 S. Ct. at 1191 ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class") (italics in original). Accordingly, "[t]he best view of [Supreme Court precedent] is that it forbids courts from considering, as part of the certification analysis under Rule 23, which side ultimately will prevail." 5 MOORE'S FEDERAL PRACTICE, § 23.84[2] at 23-390.1 – 23.391 (Matthew Bender 3d Ed.);    Plaintiffs cite to *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000), for the opposite proposition, that "courts are not foreclosed from considering the probable outcome of the litigation." Plaintiffs' Brief at 46. To the extent *Mowbray* suggested that courts may consider the probable outcome of the litigation at the class certification state, it is inconsistent with the later 2003 Advisory Committee Note, the

Supreme Court's subsequent ruling in *Amgen*, and this Court's precedent. *Szabo*, 249 F.3d at 677 ("The success of the 1966 amendments ... depends on making a definitive class certification decision before deciding the case on the merits ... A court may not say something like 'let's resolve the merits first and worry about the class later'").[10] Further, as noted above, *Mowbray* warns of the "serious questions" raised if a court addresses the merits of a claim through a plaintiff's motion for summary judgment before class certification. (*Supra* at 22, n. 9). *Mowbray* therefore does not support reversal or a conclusion that the District Court abused its discretion.

Said differently, the cases cited by Plaintiff support only a mere "peek at the merits" as needed to determine whether a class ought to be certified. In this case, Plaintiff invited the District Court not merely to "peek at the merits," but to gaze at and inspect them with a sufficiently critical eye to rule on Plaintiffs' partial dispositive motion. What the District Court saw, at Plaintiffs' urging, cannot be unseen. Plaintiffs' suggestions to the contrary, and their argument that the District Court abused its broad discretion, have no support in law or logic.

### B.     The District Court Properly Applied Rule 23.

BeavEx agrees that the three prongs of the IWPCA test are conjunctive, so all must be established to prove that a driver is an independent contractor. However, as explained above, Rule 23 only required the District Court to determine whether each prong could be established *with common evidence*. Rule 23 prohibited the District Court from deciding who would win on each prong. *Amgen*, 113 S. Ct. at 1191, 1195; *Messner*, 669 F.3d at 811; *Schleicher*, 618 F.3d at 687; *Szabo*, 269 F.3d at 675-76.

---

[10]     Plaintiffs accurately note that *Messner* cited *Mowbray*, but only indirectly and only for an unremarkable point regarding the "common nucleus of operative facts and issues" required for certification. *Messner*, 669 F.3d at 815.

  **1.**  **The District Court Properly Determined That Prong Two Could Be Determined Through Common Evidence – But Properly Declined to Decide The Merits.**

  BeavEx acknowledged below that prong two could be determined through common evidence. The District Court therefore properly so determined. Consequently, the District Court declined to rule on the merits as to prong two because such a determination was not necessary for Rule 23 purposes. DE 95 at 22. The District Court therefore properly applied the cited precedents from the Supreme Court and this Court, as well as the decisions in the Multidistrict Litigation of *In Re FedEx Ground Package System., Inc. Employment Practices Litig.*, 273 F.R.D. 424, 489 (N.D. Ind. 2008) ("*In Re FedEx I*"), and 273 F.R.D. 516, 523 (N.D. Ind. 2010) ("*In Re FedEx II*"). The court there faced exactly the same issue, and exactly the same arguments by plaintiffs, as the District Court in this case. The court there applied *Szabo* and concluded that "a determination that FedEx can't rebut the other two [prongs] would be a decision on the merits, which is improper at the class certification stage." *In Re FedEx II*, 273 F.R.D. at 523. The court in *In Re FedEx* also observed that "[r]uling on the merits before deciding class certification also would run afoul of the rule against one-way intervention." *In Re FedEx II*, 273 F.R.D. at 523. The District Court here properly followed this persuasive authority and properly applied controlling precedent in declining Plaintiffs' invitation to rule on the merits of the IWPCA claim.[11]

---

[11]  Plaintiffs cite numerous (mostly unreported) district court decisions from the District of Massachusetts, and one from the Northern District of Illinois, that granted motions for class certification under the similar Massachusetts independent contractor statute. The simple response to these decisions is that they are obviously not governing precedent, and they are wrongly decided because they conflict with Supreme Court and governing Seventh Circuit precedent. In *Brandon v. 3PD, Inc.*, No. 13-cv-03745, DE 76, slip. op. (N.D. Ill. Aug. 6, 2014), the Magistrate Judge entered a Report and Recommendation recommending class certification. The Magistrate Judge there disagreed with the notion that ruling a ruling on the second prong of the IWPCA's independent contractor test would be a ruling on the merits, and recommended that the class be certified pursuant to FED. R. CIV. P. 23(c)(4) as to the "particular issue" of the second prong. *Brandon*, DE 76, slip. op. at 30 (Aug. 8, 2014). *Brandon* is therefore

### 2.     The District Court Correctly Applied the Law to The First Prong of the IWPCA Independent Contractor Test.

The first prong of the IWPCA's independent contractor test has two parts. The first prong requires proof that that independent contractor was "free from control over the performance of his work, **both** under his contract of service **and in fact**." 820 ILCS 115/2(1) (emphasis added). The District Court evaluated the record evidence regarding control "in fact," and determined that "individual facts and evidence are [sic] abound in analysis" of the control in fact part of the first prong. DE 95 at 23. Again, the District Court's conclusion on this point is consistent with the well-reasoned conclusions in the *In Re FedEx* decisions. *See In Re FedEx I*, 273 F.R.D. at 489 ("Illinois law poses questions upon which FedEx Ground must be allowed to present driver-by-driver evidence" regarding the "right to control ..."); *In Re FedEx II*, 273 F.R.D. at 522 (same). Indeed, Plaintiffs here "concede" this point and "waive" any argument that the control "in fact" part of the first prong can be determined through common evidence. Plaintiffs' Brief at 52.

Despite this concession and waiver, Plaintiffs nevertheless argue that the District Court abused its discretion in finding that individualized issues predominate as to the first prong of the IWPCA independent contractor test. BeavEx is at a bit of a loss in trying to understand this argument. As best BeavEx can discern, Plaintiffs are arguing that (1) the first prong has two parts; (2) common evidence – namely, the drivers' owner/operator agreements – can be used to determine the first part of the first prong; (3) individualized evidence predominates on the second part of the first prong; so (4) the District Court should have ruled that the entire first prong can

---

procedurally inapposite and, to the extent it follows the District of Massachusetts decisions, wrongly decided. Plus, that is Massachusetts; this is Illinois and the Seventh Circuit.

be established with common evidence. This is a *non sequitur*. Plaintiffs do not cite any precedent for their stilted logic, because none exists.[12]

### III.  Summary.

In sum, Plaintiffs have improperly requested relief barred by Rule 23: namely, certification of a class after requesting and receiving a ruling granting their merits-based dispositive motion. Because Plaintiffs sought and received a dispositive ruling on the merits, the rule against one-way intervention now bars the class certification they seek. Contrary to Plaintiffs' argument, the District Court did not abuse its broad discretion when it denied class certification. Instead, it properly applied Supreme Court and Circuit precedent by sequencing its consideration of Plaintiffs' motions, denying Plaintiffs' motion for class certification, and then refusing to reconsider and reverse that denial based on the favorable partial summary judgment ruling Plaintiffs had requested and received. The District Court properly denied certification of Plaintiffs' proposed class and properly refused to reconsider that denial, and its class certification orders should therefore be affirmed.

### BEAVEX'S REPLY IN SUPPORT OF FAAAA PREEMPTION

### I.  Plaintiffs' Arguments Regarding the Scope of the IWPCA Are Contradicted By Their Own Pleadings and Prayer for Damages.

In their Response Brief, Plaintiffs appear to disown a substantial part of their own pleadings, and attempt to drastically narrow the scope of their IWPCA claims. Specifically, Plaintiffs now argue that the IWPCA's limitation on the use of independent contractors in Illinois

---

[12] Plaintiffs' brief cites to decisions from South Carolina and California, but they are inapposite because the "control" tests of those states' laws substantively differ from the first prong of the IWPCA's independent contractor test. *See Lewis v. L.B. Dynasty*, 770 S.E.2d 393, 395 (S.C. 2015); *Ayala v. Antelope Valley Newspapers, Inc.*, 327 P.3d 165, 171 (Cal. 2014); *see generally In Re FedEx I*, 273 F.R.D. at 458-59 (discussing California law); *id*. at 472-473 (discussing South Carolina law); *id* at 488-90 (discussing Illinois law and explaining that it differs from the law of states such as California and South Carolina).

"applies <u>only</u> to the terms of the IWPCA itself," "has no effect on the application of any other employment laws, whether state or federal," and therefore does not control or "trigger[] the application of" other employment laws. Plaintiffs' Response at 26 (emphasis in original).

Plaintiffs' argument is irrelevant to the FAAAA preemption analysis, and is inconsistent with the allegations in their own Amended Complaint. It is well settled that the FAAAA may preempt a state law even if that law's effect on a motor carrier's rates, routes, or services "is only indirect." *S.C. Johnson & Son, Inc. v. Transportation Corp. of America*, 697 F.3d 544, 552 (7th Cir. 2012) (quoting *Rowe v. N. H. Motor Transp. Ass'n*, 552 U.S. 364, 370-71 (2008)). In this case, while it may be true that "[t]he IWPCA 'does not grant any independent right to payment of wages and benefits," *Wharton v. Comcast Corp.*, 912 F.Supp.2d 655, 659 (N.D. Ill. 2012), Plaintiffs expressly allege in their Amended Complaint that BeavEx violated the IWPCA by, among other things, "failing to compensate [them] for all hours worked," Amended Class Action Complaint, Compensatory and Injunctive Relief Requests, DE 34 at ¶ 43, 45, and Plaintiffs specifically pray under the IWPCA for the Court to award them "all unpaid wages as well as reimbursement for all unlawful deductions taken by [BeavEx] from their pay." *Id.* at ¶¶ 42-45. These "unpaid wages" alleged and sought by Plaintiff under the IWPCA include not only alleged unpaid overtime and commuting time, *id.* at ¶¶ 26-27, 30, but also all costs Plaintiffs paid to purchase or lease, insure, fuel, and maintain their respective automobiles, as well as the costs of their uniforms, various types of insurance, scanners, and cellular telephones. *Id.* at ¶¶ 28-29, 31. Additionally, by Plaintiffs' own admission, their unsuccessful demand for class certification is based **solely** on their IWPCA claim and not on their other statutory and common-law claims (*see* Plaintiffs' Brief at 3, n. 1); Plaintiffs allege in their pleadings that the jurisdictional amount of these IWPCA class claims exceeds $5 million. DE 34 at ¶ 10.

The absurdity and insincerity of Plaintiffs' argument is perhaps best illustrated by their citation to the Illinois Workers' Compensation Act and the Illinois Income Tax Act to support their argument that the IWPCA does not trigger any additional statutory obligations for BeavEx. Plaintiffs in their Response spell out the standards for determining whether a company must carry workers' compensation insurance for, or withhold income taxes from the pay of, any Illinois worker. By doing so, Plaintiffs attempt to prove that those standards differ from—and are therefore not triggered by—the IWPCA's extremely restrictive definition of an "employee." *See* Plaintiffs' Brief at 26-27. But that argument directly contradicts the allegations in Plaintiffs' own Amended Complaint, which seek under the IWPCA to recover damages allegedly caused by BeavEx's failure ***to provide workers' compensation and withhold taxes from their pay.*** DE 34 at ¶¶ 30 c. and e. ("Plaintiffs were denied the accoutrements of employment, including, but not limited to … workers' compensation [and] income tax withholding").

On one hand, Plaintiffs now urge this Court to treat the IWPCA as a limited statute that merely governs BeavEx's deductions from their paychecks, and nothing more. But with the other hand, Plaintiffs continue to wield the IWPCA as their primary weapon (and as to their purported class wide claims, their *only* weapon) in a lawsuit seeking millions of dollars in alleged unpaid compensation and benefits, including among other damages the very cost of owning, fueling, insuring, and maintaining their own personal vehicles, plus a range of other "accoutrements of employment." Plaintiffs cannot have it both ways. Regardless whether they seek to recover damages indirectly by using the IWPCA as a trigger or umbrella for other state laws, or instead seek to recover those damages directly through the IWPCA itself, the IWPCA's impact upon

BeavEx in this case is clearly massive, and certainly substantial enough to trigger the broad preemptive scope of the FAAAA.[13]

## II. Other States' Limitations on Independent Contractor Usage Have Been Unanimously Struck Down at the Circuit Court Level, And That Result Is Consistent With Congress's Intent in Passing the FAAAA.

### A. Both Independent-Contractor Bans That Have Reached the Circuit Court Level Were Ruled to Fall Within FAAAA's Broad Preemption Provision.

Despite Plaintiffs' attempts to spin the issue in their Response, one fact is inescapable and clear: state or local laws like the IWPCA, which prohibit or limit motor carriers' use of independent-contractor-based business models, have lost the preemption argument both times they've reached the Circuit Court level. In both *Am. Trucking Associations, Inc. v. City of Los Angeles*, 660 F.3d 384 (9th Cir. 2011), and *Massachusetts Delivery Association v. Coakley*, 769 F.3d 11 (1st Cir. 2014), the Courts ruled that laws limiting motor carriers' usage of independent contractors were sufficiently "related to" prices, routes, or services to be subject to FAAAA preemption. Those rulings have a companion at the District Court level in the Fourth Circuit. *See Sanchez v. Lasership*, 937 F. Supp. 2d 730 (E.D. Va. 2013). [14]

---

[13]      These facts also entirely undercut the incredible argument raised by *amici* in this case, namely, that Plaintiffs' lawsuit seeks only to enforce Plaintiffs' contractual rights vis-à-vis BeavEx and therefore is excepted from the FAAAA's preemption provisions. *See Brief Amicus Curiae of Lisa Madigan, Attorney General of Illinois, in Support of Plaintiffs and Supporting Affirmance* at 9-12; *Brief of Amici Curiae Raise The Floor Alliance, Arise Chicago, Interfaith Worker Justice, and NELA/Illinois in Support of Plaintiffs-Appellees and of Affirmance of the District Court's Ruling Denying Defendant-Appellant BeavEx, Inc.'s Motion for Summary Judgment* at 8-12. It is undisputed that, under their contracts with BeavEx, none of the Plaintiffs is entitled to any of the sums requested in their Amended Complaint, and it is also beyond serious dispute that BeavEx has entirely honored the terms of those contracts with Plaintiffs. Plaintiffs brought this action against BeavEx in order to **break**—not enforce—their contracts with BeavEx, and to expand the terms of those contracts using Illinois law, specifically the IWPCA. Those facts are beyond logical debate, and prove the complete absurdity of *amici*'s arguments.

[14]      BeavEx discussed these three cases in its Brief and Required Short Appendix in support of interlocutory appeal pursuant to 28 U.S.C. § 1292(b) ("BeavEx's § 1292 Brief"), DE 15-1110-8 at pages 13-14 and 23-26.

Plaintiffs do not cite any such state or local law that has survived a Circuit Court's preemption scrutiny, because no such law exists. Instead, they try but fail to distinguish the IWPCA from both the Massachusetts law at issue in *MDA* and *Lasership* (a difficult and rather awkward task for Plaintiffs, since they previously urged the District Court to treat the Massachusetts law as "nearly identical" to the relevant clause of the IWPCA)[15] and from the City of Los Angeles regulations at issue in *ATA*. They also cite this Court to other courts' holdings regarding wholly unrelated laws, such as the employee meal or rest break laws at issue in *Dilts v. Penske Logistics, Inc.*, 769 F.3d 637 (9th Cir. 2014), which apply to employees, but do not mandate that any individual be classified as an employee. These arguments by Plaintiff are not defenses against FAAAA preemption, but are merely distractions from the central issue. State laws that prevent motor carriers from utilizing independent-contractor-based business models have not escaped the broad scope of FAAAA preemption at a Circuit Court level, and should not escape it here.

### B. The IWPCA is Easily Distinguishable From So-Called "Background" Employment and Labor Laws.

The California Supreme Court's holding in *People ex rel. Harris v. Pac Anchor Transportation, Inc.*, 329 P.3d 154 (Cal. 2014), cert. denied 2015 WL 731869 (U.S. Feb. 23, 2015), which Plaintiffs cite at pages 23-24 of their Brief, is helpful to understanding why the IWPCA (like the substantially identical provisions addressed in the *MDA* and *ATA* cases) is preempted by the FAAAA. In *Pac Anchor*, the California Attorney General sued the defendant trucking company under the state's unfair competition law, Cal. Bus. & Prof. Code § 17200 ("UCL") for violation of a number of other California state statutes and wage orders, all related to the company's decision to classify its truck drivers as independent contractors rather than

---

[15]     *See* Defendant's Notice of Supplemental Authority, DE 134 at 1, n. 2.

employees (similar to how Plaintiffs have used the IWPCA as a cover to seek damages under other statutory and common-law theories in this case). Unlike the owner-operators in the present case, the drivers in *Pac Anchor* did not own their vehicles, were not allowed to use those vehicles to conduct other business or personal affairs, and relied on the company for all their tools and equipment. *Id.* at 776.

But unlike the present case, plaintiffs pled no state-law claims that prohibited the defendant trucking company from utilizing an independent-contractor-based business model. To the contrary, the California Supreme Court expressly and correctly noted that "[n]othing in the People's UCL action would prevent defendants from using independent contractors" as drivers. *Id.* at 785. The Court expressly distinguished the California statute from state laws like the ones at issue in *MDA*, *ATA*, and the present case, explaining that:

> "The congressional record does show that Congress disapproved of a California law that denied advantageous regulatory exemptions to motor carriers who used a large proportion of independent contractors. As we have noted, however, … the People's UCL action does not encourage employers to use employee drivers rather than independent contractors. **Defendants are free to use independent contractors as long as they are properly classified.**"

*Id.* at 787 (citation omitted; emphasis added).

That distinction, which Plaintiffs gloss over here, goes to the foundation of BeavEx's preemption argument in this case. In *Pac Anchor*, the defendants were free under California law to use independent contractors as drivers, as long as those drivers were in fact properly treated as independent contractors. That result is consistent with both federal law and most states' own laws regarding independent contractor usage; <u>all</u> motor carriers in <u>every</u> state are responsible for ensuring that, if they choose to use an independent-contractor-based business model, that model is structured in such a way that contractors retain enough control and autonomy over the services they perform to properly be classified as contractors rather than employees. Thus, the effect and

intent of the laws at issue in *Pac Anchor* were comparable to the generally-applicable rules that govern the American workplace.

The IWPCA is much different. It is one of only five state statutes (along with the Massachusetts statute addressed by the First Circuit in *MDA*, Vermont, Nebraska, and a newly-passed New York law that took effect in April 2014) whose language prohibits motor carriers' use of independent contractors to perform work within "the usual course of business"—i.e., the sort of state law Congress disapproved of in passing the FAAAA.[16] Unlike the California defendant in *Pac Anchor*, BeavEx cannot utilize an independent-contractor-based business model in Illinois without violating the IWPCA, regardless whether its owner-operator drivers retain the independence, control, and autonomy to be properly classified as contractors rather than employees under the common-law standard applicable in other states.[17] In fact, in forty-five other states, BeavEx can use (and does in fact use) an independent-contractor-based business model with owner-operator drivers, and therefore is able to provide services that are financially and logistically feasible only under that model. Only Illinois, Massachusetts, Vermont, Nebraska, and New York have statutes that expressly deny BeavEx that ability.[18]

---

[16] One other state, New Jersey, also uses this same test generally in determining whether a worker satisfies the definition of "independent contractor" for purposes of its state wage-payment and wage-and-hour laws. However, that test was not an express part of the state's operative wage statutes, but instead was applied by the state's Supreme Court in *Hargrove v. Sleepy's*, 2015 WL 214382 (N.J. Jan. 14, 2015) in the absence of express statutory language on point.

[17] BeavEx takes the position that its drivers do in fact comfortably meet the description of independent contractors under common law. However, that question is not at issue in this appeal.

[18] Although the Legislative History of the IWPCA offers little guidance, the New York statute, which took effect in April 2014, makes the purpose of these laws crystal clear. Helpfully named the "New York State Commercial Goods Transportation Industry Fair Play Act," the New York law was passed by the State in response to "[s]tudies show[ing] that misclassification rates are disproportionately high in the trucking industry." *See* New York Department of Labor Fact Sheet, New York State Commercial Good Transportation Industry Fair Play Act, at https://labor.ny.gov/formsdocs/factsheets/pdfs/P760.pdf. Just like the IWPCA, the New York statute prohibits the use of contractors by motor carriers to perform

Put another way, the California statute at issue in *Pac Anchor* merely required the motor carrier, in order to maintain an independent-contractor-based business model, to ensure that its drivers were truly "independent," while the IWPCA completely bans that business model and mandates that BeavEx's Illinois drivers instead be classified as employees. There is no apparent way for an Illinois motor carrier to effectively utilize independent owner-operators while simultaneously meeting the IWPCA's independent contractor exception. California law poses no such outright ban; nor do the statutory schemes of forty-five other states. Thus, the IWPCA is not merely a "background law" that "applies to the employment relationship between employers and employees in general" and "operat[es] at least a step away from the point that BeavEx offers services to customers," as the District Court held. *See* DE 95 at 12.

To the contrary, the IWPCA on its face **mandates** an employment relationship between Illinois motor carriers and their drivers, and **prohibits** the use of independent owner-operator drivers by motor carriers. The IWPCA thus operates at the exact point at which BeavEx offers services to its customers, by specifically dictating the business model BeavEx must use to provide those services (employee-based vs. independent-contractor-based) and, therefore, dictating the nature and price of the services BeavEx can provide those customers. The IWPCA does this despite what the market dictates (which in this case is evidenced both by BeavEx's drivers' agreements to work as owner-operators under an independent-contractor-based model, and BeavEx's customers' use of the services provided under that model), and contrary to how motor carriers may lawfully conduct business in all but a few other states. The IWPCA is, put

---

services that are not "outside the usual course of business for the employer." N.Y. Lab. Code § 862-b(1)(b).

simply, an outlier and a roadblock[19] to participation in the motor carriage industry for Illinois owner-operators and the motor carriers who would engage their services.

### C.     The FAAAA Was Specifically Intended To Preempt Laws Like the IWPCA.

More precisely, to illustrate the need for the FAAAA's preemption provision, Congress cited a then-recent California state statute which, while extending deregulation from air carriers to non-air-carrier-affiliated motor carriers, denied that extension to motor carriers who used an independent-contractor-based business model instead of an employee-based model. HR Conf. Rep. 103-677 at 87, reprinted in 1994 U.S.C.C.A.N. 1715, 1759. In light of that statutory discrimination in favor of one means of providing services over another, Congress determined that federal preemption legislation was "in the public interest as well as necessary to facilitate interstate commerce," because such "[s]tate economic regulation of motor carrier operations causes significant inefficiencies, increased costs, reduction of competition, inhibition of innovation and technology and curtails the expansion of markets." *Id*. Congress noted that "[t]he sheer diversity of these [state] regulatory schemes is a huge problem for national and regional carriers attempting to conduct a standard way of doing business," and predicted that "[l]ifting of these antiquated controls will permit our transportation companies to freely compete more efficiently and provide quality service to their customers. **Service options will be dictated by the marketplace; and not by an artificial regulatory structure**." *Id.* at 87-88, reprinted in 1994 U.S.C.C.A.N. at 1769-1760 (emphasis added).[20] In his signing statement for the FAAAA,

---

[19]     Pun intended.

[20]     In its *amicus* brief, Public Citizen, Inc. concedes these facts, but then remarkably argues that the Congressional Report "does not indicate that Congress found it problematic for state to define who is an independent contractor and who is an employee or for those definitions to be different in different states." *See Brief for Amicus Curiae Public Citizen, Inc. in Support of Plaintiffs-Appellees and Affirmance on the Preemption Issue* at 15-18. In fact, the record shows that laws which defined out of the industry motor carriers who utilize independent contractors as drivers were exactly what Congress found problematic, and were exactly the sort of state legislation the FAAAA was intended to preempt.

President Clinton echoed Congress's conclusions, criticizing state-level "controls on who can enter the trucking industry within a state" and the high costs of such laws, and predicting that the FAAAA's passage would permit "[n]ew carriers … to enter the trucking industry, particularly women-and-minority-owned carriers who may have been 'frozen out' in the past by strict entry controls." President William J. Clinton, *Statement on Signing the FAAAA of 1994*, 2 Pub. Papers 1994 (Aug. 23, 1994), reprinted in 1994 U.S.C.C.A.N. 1762-1, 1762-2.

### III.   The IWPCA is Not Comparable to State Unemployment Insurance or Other Similar Laws for Purposes of FAAAA Preemption.

Plaintiffs also raise for the first time in their Response Brief the novel argument that because other statutes, both in Illinois and elsewhere, contain varying definitions of the term "employee," the IWPCA must not impose the limitations BeavEx suggests it imposes. (*See* Plaintiffs' Brief at 28-33). But as shown at Section I above, Plaintiffs expressly and specifically pleads those limitations in their Amended Complaint, alleging that BeavEx is liable under the IWPCA for the entire range of their alleged damages, including multiple categories of compensation and benefits, expenses (including the costs of purchasing, fueling, maintaining, and insuring their vehicles), and other relief. Because Plaintiffs expressly seek this relief under the IWPCA, whether any other Illinois law contains a similar restriction on the use of independent contractors is irrelevant; Plaintiffs in this case chose to circumvent those laws and to use the IWPCA as the basis for seeking all the relief they demand.

Notably, Plaintiffs' argument is largely based on other states' unemployment compensation laws. Plaintiffs' Brief at 28-30 and n. 14. (Citing to usage of the "outside the course of business" language in unemployment statutes in, among other states, Alaska, Arkansas, Connecticut, Delaware, Maryland, New Hampshire, and New Jersey). Once again, Plaintiffs'

reliance on the definition of "employee" in unemployment insurance laws is mystifying, since Plaintiffs in their Amended Complaint expressly seek to recover damages for denial of unemployment insurance DE 34 at ¶ 30.d. under the IWPCA, despite the fact that Illinois' Unemployment Insurance Act, 820 ILCS 405/100 *et seq.* does not formally define the term "employee" (but instead appears to defer to the definition set forth in Chapter 24 of the Internal Revenue Code) and actually appears to exclude some owner-operator drivers' services from the definition of "employment." *Id.* at 405/212.1. Once again, Plaintiffs' own pleadings contradict, and prove the speciousness of, the arguments contained in their Response Brief, and highlight the irrelevance of Illinois's or any other state's unemployment compensation law to whether the IWPCA is preempted here.

## IV.    The First and Third Prongs of the IWPCA's "Employee" Definition Are Not Severable From the Preempted Second Prong

Finally, in a last-ditch attempt to salvage the sole statutory basis of their failed class action, Plaintiffs argue that even if the IWPCA's bar on the use of independent-contractor-based owner-operator business models by motor carriers (the so-called "second prong") is preempted, the two remaining prongs of the Act's definition of "employee" should survive and be enforced. That argument is groundless.

When deciding whether the preemption or invalidity of part of an Illinois statute invalidates the remainder of the statute, this Court should consider:

> whether the valid and invalid provisions of the Act are so mutually connected with and dependent on each other, as conditions, considerations or compensation for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently

*Best v. Taylor Machine Works*, 689 N.E.2d 1057, 1101 (Ill. 1997) (citations omitted). In this case, the Court need look no farther than the express language of the statute itself. As noted

above, the provision that governs when an Illinois worker may lawfully be classified as independent contractor contains three prongs. Those three prongs are "conjunctive," meaning "all three [of them] must be satisfied" for a worker to be lawfully classified as an independent contractor and not an employee. *Novakivac v. Samutian*, 820 N.E.2d 967, 973-74 (Ill. App. 2004). "As such, all of the Act's provisions are 'inextricably bound.'" *Cincinnati Ins. Co. v. Chapman*, 691 N.E.2d 374, 383 (Ill. 1998) (citation omitted). "From this, we can only conclude that the bill was meant to be passed in its entirety, not in pieces." *Id.*

The Illinois Legislature erected three barriers to classification of a worker as an independent contractor rather than an employee. That all three of those barriers must be satisfied cannot be disputed. Because the Illinois Legislature made these three barriers interdependent, and expressly required all three to be met as a precondition to satisfying the narrow statutory exception, this Court should conclude that "the legislature would not have passed the statute without the provision deemed [preempted]." *Best*, 689 N.E.2d at 1101.

## CONCLUSION

Plaintiffs in this litigation made the strategic decision to move for partial summary judgment under the Illinois Wage Payment and Collection Act. Simultaneously, Plaintiffs sought certification of a class pursuant to FED. R. CIV. P. 23. Plaintiffs were successful in their quest for a favorable merits ruling on the IWPCA claim, but the District Court correctly refused to certify the case for class treatment. With a favorable ruling on the merits in their hip pocket, Plaintiffs asked the District Court to reconsider its class certification ruling, which it rightly declined to do. Still undeterred, Plaintiffs now ask this Court to reverse the District Court and certify its proposed class (again, with a favorable summary judgment now neatly tucked away). But the law prohibits such a result. Specifically, the rule against one-way intervention bars certification of a

class where Plaintiffs have invited the trial court to analyze and rule on the merits of the case. The District Court, having accepted Plaintiffs' invitation and issued a ruling on the merits, was therefore well within its broad discretion to refuse to certify Plaintiffs' class, and the Court's decision in that regard is strongly supported by well-established Supreme Court and Seventh Circuit precedent. The District Court properly denied Plaintiffs' motion for class certification, and no legal basis exists for this Court to find any abuse of discretion on that issue.

At the same time, BeavEx has demonstrated that the IWPCA's restrictive definition of "employee" acts as a bar to Illinois motor carriers' usage of an independent-contractor-based business model to provide services to their customers. If enforced, that statute would not only compel BeavEx to change its Illinois business model to one that is both contrary to the market's demands and different from what BeavEx lawfully uses in other states, but under Plaintiffs' theory of the case (as set forth in detail in Plaintiffs' Amended Complaint) would also force BeavEx to incur staggering financial costs. The Federal Aviation Administration Authorization Act therefore preempts that portion of the IWPCA, and Plaintiffs' attempt to downplay the breadth of their pleadings and the scope of the law are contradicted by the facts.

For these reasons, and as set forth herein and in BeavEx's *Brief and Required Short Appendix of Defendant-Appellant*, this Court should affirm the District Court's denial of Plaintiffs' motion for class certification, reverse the District Court's ruling denying BeavEx's motion for summary judgment on the question of whether the FAAAA preempts the IWPCA's independent contractor provisions and enter judgment in BeavEx's favor on that question, and remand this case for entry of judgment consistent with this Court's holdings.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 13,022 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii)

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 12 point Times New Roman font.


*/s/ Kevin M. Duddlesten*
Kevin M. Duddlesten

☑

# CERTIFICATE OF SERVICE

**Certificate of Service When All Case Participants Are CM/ECF Participants**

I hereby certify that on _____June 8, 2015_____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ ___Kevin M. Duddlesten_____

☐

# CERTIFICATE OF SERVICE

**Certificate of Service When Not All Case Participants Are CM/ECF Participants**

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

counsel / party:                                    address:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

s/ _____